STEVEN C. SMITH (State Bar No. 116246)
JOHN S. CLIFFORD (State Bar No. 172263)
SMITH, CHAPMAN & CAMPBELL
A Professional Law Corporation
1800 North Broadway, Suite 200
Santa Ana, California 92706
Telephone: (714) 550-7720
Facsimile: (714) 550-1251
E-mail: ssmith@smithchapman.com

DYKE E. HUISH (State Bar No. 167690)
Law Office of Dyke E. Huish
8105 Irvine Center Drive, Suite 1020
Irvine, CA 92618

Attorneys for Plaintiff Epifania Nicolas

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

EPIFANIA NICOLAS,

      Plaintiff,

vs.

CITY OF RIVERSIDE, CALIFORNIA;
CITY OF RIVERSIDE POLICE
DEPARTMENT; COUNTY OF
RIVERSIDE; COUNTY OF
RIVERSIDE DISTRICT ATTORNEY'S
OFFICE; JIM BRANDT; MICHAEL
MEDICI; MICHAEL HESTRIN; CHIEF
OF POLICE RUSS LEACH; DISTRICT
ATTORNEY ROD PACHECO;
GROVER C. TRASK; and DOES 1
through 10, Inclusive,

      Defendants.

Case No. CV09-01737 SVW PJWx

**COMPLAINT FOR DAMAGES**

1. False Arrest/False Imprisonment
2. Negligence
3. Negligent Hiring, Supervision, etc.
4. Violation of Civil Rights (California Civil Code Section 52.1)
5. Violation of Civil Rights (42 U.S.C. § 1983)

**DEMAND FOR TRIAL BY JURY**

PLAINTIFF ALLEGES:

    1.    In response to a faulty and unlawfully effectuated arrest warrant, Defendants unlawfully arrested and tortiously harmed Plaintiff Epifania Nicolas, a California resident who now seeks redress for such harm in this Court.

1

**PLAINTIFF**

2.     At all times relevant herein, Plaintiff Dr. Epifania Nicolas is and was an adult female and a resident of California.  Dr. Nicolas is domiciled in the State of California, and this court may properly exercise jurisdiction over this plaintiff.

**DEFENDANTS**

3.     For the events described herein, each and all individual defendants were acting both or either within the course and scope of his or her professional duties, and/or in his or her individual capacity.  Therefore, Plaintiff sues each and all individual Defendants in this complaint in their individual and official capacity.

4.     Plaintiff is hereby suing parties that are individuals and/or public entities that are domiciled or doing business in the State of California.

5.     At all times relevant herein, Defendant Riverside Police Department ("RPD") is a public entity, duly organized and existing under and by virtue of the laws of the State of California, with supervisory powers over the agencies under its control and supervision, including but not limited to the entire police force.  Defendant RPD is domiciled in the State of California, and this Court may properly exercise jurisdiction over this Defendant.

6.     At all times relevant herein, Defendant City of Riverside ("City") is a public entity, duly organized and existing under and by virtue of the laws of the State of California, with supervisory powers over the agencies under its control and supervision, including but not limited to Defendant RPD and its entire police force.  Defendant City is domiciled in the State of California, and this Court may properly exercise jurisdiction over this Defendant.

7.     Plaintiff is informed and believes and thereupon alleges that at all times relevant herein, Defendant Detective Jim Brandt is at all times herein mentioned a police officer for Defendant RPD, hired to help RPD preserve peace and order and obligated to protect and respect the civil rights of person he encounters in the course of his professional duties.  This defendant is domiciled in the State of California.  Moreover,

1   in his official capacity acting in concert with each and/or all of the defendants, and/or
2   acting alone as an individual, Detective Brandt acted tortiously and unlawfully, directly
3   and proximately causing harm to Plaintiff, who rightfully seeks redress by this Defendant
4   for such harms in this Court.

5          8.     Plaintiff is informed and believes and thereupon alleges, that at all times
6   relevant herein, Defendant Detective Mike Medici is a police officer for Defendant RPD,
7   hired to help RPD preserve peace and order and obligated to protect and respect the civil
8   rights of person he encounters in the course of his professional duties. Detective Medici
9   is domiciled in the State of California.  Moreover, in his official capacity acting in
10  concert with each and/or all of the defendants, and/or acting alone as an individual,
11  Detective Medici acted tortiously and unlawfully, directly and proximately causing harm
12  to Plaintiff, who rightfully seeks redress by this Defendant for such harms in this Court.

13         9.     Plaintiff is informed and believes and thereupon alleges that at all times
14  relevant herein Defendant Chief of Police Russ Leach is a resident of the State of
15  California, and a police officer for Defendant RPD, hired to help RPD preserve peace
16  and order and obligated to protect and respect the civil rights of persons he encounters
17  in the course of his professional duties.  Defendant Leach is the Chief of Police of
18  Defendant RPD, with supervisory authority and control over all police officers working
19  with the RPD, including such officers that were and directly and proximately liable for
20  the harms done to Plaintiff.  This defendant is domiciled in the State of California, and
21  this Court may properly exercise jurisdiction over this defendant.

22         10.    At all times relevant herein, Defendant County of Riverside District
23  Attorney's Office (hereinafter, the "DA's Office") is a public entity, duly organized and
24  existing under and by virtue of the laws of the State of California, with supervisory
25  powers over the agencies and/or employees under its control and supervision, including
26  but not limited to Defendant Michael Hestrin.  Defendant DA's Office is domiciled in
27  the State of California, and this Court may properly exercise jurisdiction over this
28  defendant.

11.     At all times relevant herein, Defendant County of Riverside ("County") is a public entity, duly organized and existing under and by virtue of the laws of the State of California, with supervisory powers over the agencies under its control and supervision, including but not limited to the DA's Office and its entire staff.  Defendant County is domiciled in the State of California, and this Court may properly exercise jurisdiction over this Defendant.

12.     Plaintiff is informed and believes and thereupon alleges that from Jan. 1, 2007, through the present, Defendant Rod Pacheco is a resident of and domiciled in the State of California, and as the District Attorney of Riverside County, California, he is an employee with supervisory powers over all employees of the DA's Office.  This Court may properly exercise personal jurisdiction over this defendant based upon his domicile in the State of California, and because he is an agent and/or employee of the DA's Office.

13.     Plaintiff is informed and believes and thereupon alleges that at all times relevant herein until January 1, 2007, Defendant Grover C. Trask is a resident of and domiciled in the State of California, and as the District Attorney of Riverside County, California, he was an employee with supervisory powers over all employees of the DA's Office.  This Court may properly exercise personal jurisdiction over this defendant based upon his domicile in the State of California, and because he was an agent and/or employee of the DA's Office.

14.     Plaintiff is informed and believes and thereupon alleges that at all times relevant herein, Defendant Michael Hestrin is a resident of and domiciled in the State of California, and as the Deputy District Attorney of the DA's Office, he is an employee with supervisory powers over other employees of the DA's Office.  This court may properly exercise personal jurisdiction over this Defendant based upon his domicile in the State of California, and because he is an agent and/or employee of the DA's Office.

15.     Plaintiff is informed and believes and thereupon alleges that at all times relevant herein, DOES 1 through 100, inclusive and each of them, is in some manner

4

1  liable to Plaintiffs for the damages alleged herein. Plaintiffs are unaware or uncertain
2  of the true identity, capacity, or liability of the defendants sue herein as Does 1 through
3  100, inclusive, and therefore sue such defendants by fictitious names. If the Court and/or
4  the parties find it necessary, Plaintiff will seek leave of court to amend this complaint to
5  add their true names and capacities when such is ascertained. Defendant Does 1 through
6  100, inclusive, shall hereinafter be referred to as the "Doe Defendants."

7      16.    Defendants City, County, RPD, the DA's Office, and Doe Defendants 1
8  through 5 are public entities, and are collectively referred to in this Complaint as Public
9  Entity Defendants.

10     17.    Defendants Leach, Brandt, Medici, Pacheco, Trask, Hestrin, and Doe
11 Defendants 6 through 100 are individuals, and are collectively referred to in this
12 Complaint as Individual Defendants.

13     18.    Plaintiff is informed and believes, and thereupon alleges that at all times
14 relevant herein, in acting unreasonably, unlawfully, intentionally maliciously, or
15 negligently, or in failing to act according to the duties incumbent upon them by law,
16 professional standard, or within the confines of reasonableness, each and every
17 defendant conspired with, and/or was the supervisor, employer, master, agent, employee,
18 and/or representative of every other defendant, and therefore was acting within the
19 course and scope of such relationship or agency, and/or was acting in their individual
20 capacity.

21     19.    In doing the acts and/or omissions alleged herein, Defendants, and each of
22 them, acted under color of authority and/or color of law.

23                          **VENUE AND JURISDICTION**

24     20.    Venue is proper in this judicial district because the conduct complained of
25 herein occurred primarily in the City of Riverside, County of Riverside, State of
26 California, and/or at the direction of Defendants City, County, RPD, the DA's Office,
27 and their respective employees, representatives and/or agents. Venue is also proper in
28 this judicial district because Plaintiff, who incurred harm at the hands of Defendants,

1 | resides in Yorba Linda, California.

2 |      21.   This Court may properly exercise jurisdiction over this case based on
3 | federal question jurisdiction, because this suit alleges violations of the United States
4 | Constitution, namely the Fourth and Fourteenth Amendments, and other violations of
5 | federal statutory law, including 42 U.S.C. § 1983.

6 | **RESPONDEAT SUPERIOR**

7 |      22.   Plaintiff is informed and believes and thereupon alleges that at all times
8 | relevant herein, the Defendants and each of them maintained master-servant, employer-
9 | employee, supervisor-supervisee relationships between and among them, and each of
10 | them, thereby resulting in vicarious liability under the respondeat superior doctrine.

11 |      23.   Plaintiff is informed and believes and thereupon alleges that at all times
12 | relevant herein, certain defendants possess and/or possessed supervisory authority over
13 | other defendants.

14 |      24.   Defendant City supervises Defendant RPD, which is headed by Defendant
15 | Leach, who in turn supervised Defendants Brandt, Medici, and Doe Defendants 6
16 | through 25.

17 |      25.   Defendants City, RPD, Leach, Brandt, Medici and/or Doe Defendants
18 | employed by City have supervisory power, or otherwise directed, motivated, employed,
19 | or had a similar type of master-servant, principle-agent relationship with Defendants
20 | County, the DA's Office, and all named and Doe Defendants employed by DA's Office
21 | in this complaint, so far as the effectuation of the warrant for, search and seizure, arrest,
22 | imprisonment, and other actions against Plaintiff.

23 |      26.   Defendants Brandt and Medici, at the time of Plaintiff's unlawful arrest and
24 | also during the duration of the time of Plaintiff's unlawful imprisonment, possessed
25 | supervisory power over RPD police officers and Doe Defendants 26 through 35.

26 |      27.   Plaintiff is informed and believes and thereupon alleges that Defendant
27 | County supervises the DA's Office, which was headed by Defendant Trask at all times
28 | relevant herein until January 1, 2007, who in turn possessed supervisory powers over

1    Defendant Michael Hestrin, who in turn possessed supervisory powers over various Doe
2    Defendants 36 through 55.

3        28.    Plaintiff is informed and believes and thereupon alleges that Defendant
4    County supervises the  DA's Office, which was headed by Defendant Pacheco from
5    January 1, 2007 through the present, who in turn possessed and possesses supervisory
6    powers over Defendant Michael Hestrin, who in turn possessed and possesses
7    supervisory powers over various Doe Defendants 56 through 75.

8        29.    Plaintiff is informed and believes, and thereupon alleges that at all times
9    relevant herein, certain Doe Defendants were supervisors or employees, and Plaintiff will
10    amend this complaint upon leave of court when Plaintiff ascertains their true identity,
11    capacity and liability.  Plaintiff in good faith does not know the exact nature of the
12    relationships between and among the named and Doe Defendants. Therefore, throughout
13    this Complaint, Plaintiff will refer to any and all of the master, employer, supervisory,
14    and/or administrator Defendants, be they named or Doe Defendants, as "Master
15    Defendants," and to any and all of the servant, employee, supervised, and/or agent
16    Defendants, be they named or Doe Defendants, as "Servant Defendants." If the Court
17    and/or the parties find it necessary, Plaintiff will seek leave of court to amend this
18    complaint to clarify the true capacities and relationship of the parties when such is
19    ascertained.

20                              **FACTS**

21        30.    Mostafa Shirazi ("Mostafa") was murdered in downtown Riverside on
22    August 15, 2005, at approximately 11:01 a.m.  He was shot dead by Jose Olivarez and
23    Frank Bazzo, who were both later convicted of the murder.

24        31.    RPD immediately began an investigation under the direction of Detectives
25    Jim Brandt and Mike Medici (collectively, the "Detectives").  Initially, Brandt and
26    Medici contacted Mostafa's wife, Yolani Shirazi ("Yolani"), to inform her of her
27    husband's death.

28

32.     While interviewing Yolani, the Detectives learned that Mostafa had previously been married to Plaintiff Dr. Epifania Nicolas, that they had three sons together, and that they had recently settled the financial portion of their divorce.  The Detectives also learned that Dr. Nicolas had been married to Frank Bazzo who, they were told, had an ongoing dislike for Mostafa.

33.     The Detectives visited Bazzo at the home he was staying at in Muerrieta that evening and questioned him about his relationship with and feelings towards Mostafa.  They noted during their interview that Bazzo's behavior seemed to be feigned, especially when he was told of the killing.  The home that the Detectives interviewed Bazzo in belonged to the Dr. Nicolas.  At the time, however, Dr. Nicolas was living in Blythe, where she had a then thriving dental practice.

34.     The Detectives spoke to Dr. Nicolas that evening as well, and informed her of the murder.  Detective Brandt noted that Dr. Nicolas seemed to be shocked by the news, could not comprehend what he was saying, and appeared to be in a state of disbelief.  Additionally, the people Dr. Nicolas was with at the time also all noted her complete and overwhelming grief.  She was sick for a week and closed down her practice.  She had a terrible time sleeping and was ultimately prescribed medication for her despair.

35.     Although she was grieving, Dr. Nicolas agreed voluntarily to meet with the police and give them a full recorded statement.  Dr. Nicolas, along with a friend and Dr. Nicolas's family attorney, went to the RPD station and answered all questions asked of her.  She told the police about her on-again, off-again relationship with Bazzo and the settlement of her divorce with Shirazi.  She explained that Bazzo often lied, and that he had stolen money from her, but also that he was kind to her.

36.     Dr. Nicolas was asked if she thought Bazzo was involved in the shooting.  She responded that she did not know, and hoped not, but also that she knew that Bazzo often lied about things.  She also stated that she would not and could not validate his alibi.

8

37.     Dr. Nicolas told the police that, at the time of the death, she was driving back from Las Vegas where she had spent the weekend.  There was never any question that Dr. Nicolas was nowhere near the murder–she was several hundred miles away at the time.

38.     The police asked Dr. Nicolas if she was willing to help with a potential "sting" operation to see if Bazzo was involved.  She agreed to cooperate, stating that she was willing to do anything to help the investigation.  She was asked if she would take a Polygraph test.  She said she would, and volunteered to do so immediately.  She was not allowed to do so at that time.  Later, the Detective Defendants would tell a magistrate under oath in order to get a warrant that Dr. Nicolas had refused to take a polygraph test—this was simply not true.

### Misconstruing of Cell Phone Records

39.     The Detectives obtained the cell phone records of Bazzo and Dr. Nicolas for the time period around the death of Mostafa.  They found that, at the time of the shooting, Bazzo and Nicolas had a brief conversation.  They also found that Bazzo had been talking to someone else in this time frame.  That person was later identified as Joe Olivarez.

40.     Based solely upon the call between Dr. Nicolas and Bazzo and its proximity to the murder, the Detectives determined that Dr. Nicolas was involved.

41.     The Detectives were aware of many other calls made by Bazzo that day, and had gained information about the content of these calls through their investigation.  It became clear that, while the timing of the call between Dr. Nicolas and Bazzo was coincidental, such timing did not give any weight to her involvement when considered in the context of the other calls.

42.     A simple analysis of Dr. Nicolas's calls shows that they are not evidence of her involvement in any conspiracy.  In multiple reports, however, and while under oath in front of a Grand Jury, Defendant Medici greatly exaggerated the number of calls made and the interactive nature of the calls.  Additionally, Medici failed to report other

9

1  information related to the timing of those calls.  His testimony intentionally and/or

2  recklessly created the misimpression that Dr. Nicolas had been repeatedly calling Bazzo,

3  in what Medici characterized as a "triangulation" process. This testimony was made with

4  a total and careless disregard for the facts claimed as its basis.

5  ### *Links between Dr. Nicolas and Jose Olivarez*

6      43.    The Detectives interviewed numerous people regarding Dr. Nicolas's

7  alleged involvement in the murder, but found *no evidence* to link her to Mostafa's death.

8  They did learn that Joe Olivarez had performed work for Dr. Nicolas.  He was a

9  construction worker, and had been hired by Frank Bazzo to work on a board and care

10  facility which Dr. Nicolas owned in Tujunga, California.  Dr. Nicolas and Olivarez had

11  never met, however, and no information regarding communications between them was

12  ever obtained by the police.

13      44.    In connection with the construction work, Dr. Nicolas signed numerous

14  checks to Olivarez.  Those payments were tied to the construction work performed, the

15  work was easily verifiable, and the expenses were directly related to the work done.  In

16  addition, multiple witnesses saw Olivarez do the work and he also paid others for

17  working on the project as well.  The work lasted for nearly six months, and the total paid

18  to Olivarez— approximately $70,000—was directly proportional and rationally related

19  to the amount of work done.

20      45.    The Detectives never investigated the work done for Dr. Nicolas.

21  Additionally, and without any foundation, the Detectives claimed that Olivarez had been

22  paid over $235,000 by Dr. Nicolas.  This number, which was never supported by any

23  evidence whatsoever, was used by the Detectives as a basis for their alleged "probable

24  cause" in arresting and imprisoning Dr. Nicolas.

25      46.    On November 9, 2005, Olivarez was arrested following the development of

26  evidence placing him as the shooter and connecting him to a car that was similar to the

27  one driven by the getaway driver.

28

47.     When questioned, Olivarez related the details of his work for and connections with Dr. Nicolas.  Olivarez told the police that he was a contractor, and that he had performed work for Bazzo and Dr. Nicolas at the Wyngate facility.  He said that Dr. Nicolas's sister, Julie, was the administrator, and that he had dealt mostly with her.  He said that he spoke to Bazzo on the phone about jobs.  He said that he was paid mostly by check, and that he did not know who signed the checks.  He related that he had repaired a roof on one of Bazzo and Dr. Nicolas's other businesses for $20,000.  He had been paid approximately  $60,000 to $90,000 for other jobs.  At no time did Olivarez implicate defendant Nicolas in the murder.

48.     Bazzo was also arrested on November 9, 2005.  He confirmed that Olivarez worked for him.  And he, too, did not implicate Dr. Nicolas in the murder.

### Improperly Obtained and Conducted Wiretap

49.     During the course of the RPD investigation, the Detectives claimed to the court that they had exhausted all leads on the case and needed to wiretap Dr. Nicolas's phone lines.  This assertion was false, as the Detectives had not done much investigation beyond a few interviews and a cursory survey of cell phone records, from which they had drawn erroneous and unsupported conclusions.

50.     The court granted the wiretap request, but specifically instructed the Detectives in its order to draw up reports on the calls that they monitored, which they failed to do.  They were also ordered not to listen to or monitor calls between Dr. Nicolas and her attorneys—yet on at least *seventeen occasions* they listened to and recorded calls protected by the attorney-client privilege, in violation of the court's order and Dr. Nicolas's civil rights.

### Improperly Obtained Search Warrants

51.     The Detectives also exaggerated claims and made misleading statements in order to obtain search warrants for Dr. Nicolas's home and office.  They misstated statements made during monitored calls in such a way that the court was left with the impression that Bazzo and Dr. Nicolas were covering up involvement with one another

1   in Mostafa's death.  The actual taped calls, however, show that the Detectives misled the
2   court.

3       52.    On November 19, 2005, RPD officers served a search warrant at Dr.
4   Nicolas's residence on El Tigre.  They contacted Dr. Nicolas and her son, Shawn, who
5   were cooperative.  The officers indicated that they were not arresting her.

6       53.    During a lengthy conversation that day between Dr. Nicolas and RPD
7   officers, Dr. Nicolas indicated that she believed that Bazzo was capable of murdering
8   Mostafa.  She additionally indicated she was afraid of Bazzo.  She again stated that she
9   wanted to take a polygraph.  She told the officers that her lawyers had now told her not
10  to take the polygraph test because of Bazzo's arrest, because her lawyers thought that
11  whatever statements she made would be twisted and made to sound incriminating.  Dr.
12  Nicolas stated, however, that she wanted to take the polygraph against the advice of her
13  lawyers in order to aid the investigation.  The officers indicated they would schedule one
14  and let her know.

15              ***False Arrest and Imprisonment***

16      54.    On or about November 23, 2005, Defendant Hestrin ordered, directed,
17  orchestrated, or otherwise caused the arrest of Dr. Nicolas for the murder of Mostafa
18  Shirazi.

19      55.    Plaintiff is informed and believes and thereupon alleges that in so ordering
20  Plaintiffs' arrest, Defendants Hestrin and his supervisors, including Defendants Trask
21  and the DA's Office were acting not as prosecutors in connection with a trial or with the
22  judicial phase of the criminal process, but as police officers.

23      56.    On November 23, 2005, Dr. Nicolas was arrested.  The alleged motive for
24  her involvement in the murder, the Detectives believed, was based upon a theory in
25  which Dr. Nicolas could regain control of Mostafa's estate by seeking to unwind the
26  settlement agreement that had been signed immediately preceding his death.  This
27  alleged theory of motive, which was used to support the "probable cause" for the arrest,
28  was unfounded by any facts, any legal theory, or any actions taken by Dr. Nicolas.  At

1   no time did she ever attempt to unwind the settlement, takes any steps in preparation of
2   unwinding, or cause her attorney's to do so.  Even if she had taken such steps, it would
3   not have given her any advantage legally or financially—in fact, such actions could have
4   worsened her legal or financial condition.  RPD did nothing to evaluate this flimsy and
5   unsupported theory, and failed to consult with any attorney about the legal substance of
6   the theory.  Instead, defendants made an irresponsible and grotesque leap, and claimed
7   that this unsupportable theory was Dr. Nicolas's alleged motive.

8          57.    Police also relied upon a statement by Dr. Nicolas's untrained bookkeeper
9   that $40,000 had gone missing around the time of the murder.  This statement was not
10  supported by any factual evidence, and the police did nothing to follow up on the
11  bookkeeper's unfounded assertion.  When told of the statement, Dr. Nicolas stated
12  concern about the potential that the money was missing.  Detectives Brand and Medici
13  based their "probable" cause in part on Dr. Nicolas's concern when told that $40,000
14  might be missing, even though no money was actually ever missing, and even though
15  such concern was natural upon learning that such an amount might be missing.

16         58.    When she was arrested, RPD officers told Dr. Nicolas that Defendant
17  Deputy District Attorney Michael Hestrin had instructed them to arrest her.  The arrest
18  took place the day before Thanksgiving.  RPD was aware that Dr. Nicolas was
19  represented by counsel, and was also on notice that counsel was out-of-state for the
20  Thanksgiving holiday.  Because of the intervening holiday and weekend, Defendant was
21  not brought before a magistrate for more than 120 hours following her arrest.

22                    ***Reliance on Testimony from Jailhouse Snitch***

23         59.    After spending five nights in jail without any contact with her attorney, Dr.
24  Nicolas was transferred from Indio Jail to the Main Jail in Riverside (Robert Presely
25  Detention Center).  She was placed in a cell with two other women: Annette Caldera and
26  Jestinna Pelum.  The day after Dr. Nicolas was booked into the Main Jail, Caldera was
27  being interviewed by RPD because she claimed that she had information about a
28  methamphetamine laboratory that was near a school.  Caldera was offering this testimony

in hope of avoiding a lengthy prison sentence.   During this interview, it became clear to the interviewing officer that Caldera had no information of value.  Caldera then claimed that she also had other information; specifically, that her new cell mate of only twenty-four hours—Dr. Nicolas—had confessed to her that she had killed her husband. Because this was the Detectives case, the interviewing officer called Defendants Brandt and Medici.

60.    The Detectives took Caldera from the jail to a Jack-in-the-Box restaurant for a meal, and then for a lengthy drive around Riverside to "look at Christmas lights" and talk about Dr. Nicolas's case.  The Detectives then called in Defendant Hestrin to interview Caldera.

61.    Caldera made numerous statements implicating Dr. Nicolas, including that Dr. Nicolas had admitted to her that she was the "mastermind" of Mostafa's killing.  She also made additional claims about how this alleged admission was made.  She also told the Detectives and Hestrin that Pelum, the other girl who shared the cramped twelve by fifteen foot cell with her and Dr. Nicolas was in the room at the time of the alleged confession, but that Pelum had not heard any of Dr. Nicolas's alleged admissions because she was "asleep."

62.    None of the defendants ever bothered to interview Pelum.  None of the defendants made any effort to secure Pelum's testimony in order to either validate or repudiate Caldera's assertions. Defendants failed to do so even though they were aware that Caldera had a very long history of fraud, theft, perjury, and other crimes of moral turpitude.  In return for her offer to testify about the alleged confession by Dr. Nicolas, the DA's Office instead cut her a deal, and fifteen days later she was released.

63.    As soon as Dr. Nicolas's attorneys learned of Pelum's existence, they requested her name from the DA's Office.  It took *fourteen months* for the DA's Office to give Pelum's name to Dr. Nicolas's attorneys, the entire duration of which Dr. Nicolas remained falsely imprisoned.

64.   After learning Pelum's name, Dr. Nicolas's attorneys immediately found and interviewed Pelum.  She told Dr. Nicolas's attorneys, and subsequently the DA's Office, that at no time did Dr. Nicolas ever confess to any killing.  In fact, Pelum contended, Dr. Nicolas maintained her innocence the entire time she was in the cell.  Pelum said that Caldera was constantly asking Dr. Nicolas questions, trying to get information about her case, and that when asked Dr. Nicolas would tell her that the police thought she was involved, but that she was not.  Pelum explained that she was only in jail for two nights, and could not remember every detail given that so much time had passed.  She was certain, however, that Dr. Nicolas had never claimed any involvement in the murder.

65.   Dr. Nicolas's attorneys requested the policy and procedure manuals of both RPD and the DA's Office for the handling of informants and/or jailhouse snitches.  In open court, representatives of both defendants stated that no such manuals or procedure exists.  No manuals were ever produced.

66.   Prior to the disclosure of Pelum's name to Dr. Nicolas's attorneys, Caldera testified in front of Dr. Nicolas's grand jury.  The grand jury was never told of Pelum's existence.

67.   Following this testimony, Caldera was again arrested for theft and taken into custody.  While in custody Dr. Nicolas's attorneys asked for copies of her recorded phone calls.  The DA's Office claimed that it had no new deal with Caldera.  During one call, however, Caldera began talking about her deal, when she was cut off by an investigator from the DA's Office, who told her not to discuss the deal on "this recorded line," because Dr. Nicolas's attorneys would get to hear the calls.  Later, at trial, Caldera claimed that she had no deal whatsoever with the DA's Office.  Just two weeks after the verdict, however, she was released from custody.

68.   During the presentation of evidence to the grand jury, Defendant Medici made misleading and false statements in an effort to obtain an indictment.  These

1 │ statements include his exaggeration of the calls made by Dr. Nicolas to Bazzo on the day
2 │ of Mostafa's murder.

3 │       69.    As a result Defendants' acts and/or omissions, Dr. Nicolas was falsely
4 │ arrested and imprisoned without bail for 843 days.  On March 14, 2004, a unanimous
5 │ jury acquitted Dr. Nicolas of any involvement in Mostafa's murder, and she was finally
6 │ freed from her unlawful incarceration.

7 │ **FIRST CAUSE OF ACTION**

8 │ **(False arrest/false imprisonment against all Individual Defendants)**

9 │       70.    Plaintiff hereby realleges and incorporates each and every allegation set
10 │ forth in the above paragraphs as if fully set forth herein.

11 │       71.    Plaintiff is informed and believes and thereupon alleges that Defendants
12 │ and/or each of them, acting individually and/or in concert with one another, with
13 │ knowledge, intent, and malice aforethought, and/or reckless disregard of substantial harm
14 │ likely to occur to Dr. Nicolas, did the following acts, and/or intentionally, directly and
15 │ proximately caused the following acts to be done by co-defendants: searched and seized
16 │ Dr. Nicolas's property without probable cause and falsely arrested and imprisoned Dr.
17 │ Nicolas against her will without probable cause.

18 │       72.    The acts and/or omissions of Defendants described above were done without
19 │ probable cause, and were not objectively reasonable.

20 │       73.    The acts and/or omissions of the Servant Defendants and each of them,
21 │ individually and/or while acting in concert with one another, as alleged herein, were
22 │ done within the course and scope of their employment, agency, and/or service, and were
23 │ done under the color of law and public authority.  Master Defendants are therefore liable
24 │ for said unlawful search and seizure, false arrest, and false imprisonment under
25 │ California Government Code sections 815.2, 815.3, 820, the legal doctrine of respondeat
26 │ superior, and other laws

27 │       74.    Alternatively, the acts and/or omissions of the Servant Defendants and/or
28 │ each of them, individually and/or while acting in concert with one another, as alleged

herein, were done within the individual capacity of such defendants, and therefore such defendants are individually liable for the harm caused to Dr. Nicolas directly and/or proximately caused by such acts and/or omissions.

75.    As a direct and proximate result of the unlawful search and seizure, false arrest, and/or false imprisonment of Dr. Nicolas by defendants, and/or each of them, Dr. Nicolas suffered substantial harm, including but not limited to emotional damage, damage to her reputation in her community, and serious and significant violations of her civil rights under the laws of the State of California and of the United States of America.

76.    Plaintiff is informed and believes and thereupon alleges that the conduct of defendants and each of them as alleged herein was intentional, malicious, and/or oppressive. As a result, Dr. Nicolas is entitled to an award of punitive and exemplary damages against said defendants and/or each of them, in amounts to be determined according to proof.

## SECOND CAUSE OF ACTION

### (Negligence against all Individual Defendants)

77.    Plaintiff hereby realleges and incorporates each and every allegation set forth in all the above paragraphs as though fully set forth herein.

78.    Plaintiff is informed and believes and thereupon alleges that Defendants and each of them, acting individually and/or in concert, and/or acting within the course and scope of their employment, owed Dr. Nicolas a duty to use due care at or about the times of the aforementioned acts and/or omissions. Defendants owed Dr. Nicolas a duty to use due care to preserve order, to protect her civil rights under state and federal law, to be properly trained and aware of the law, to safeguard the public and persons such as Dr. Nicolas, and to maintain her security and safety in a reasonable manner at all times.

79.    As a result of Defendants' and each of their aforementioned unlawful acts and/or omissions, Dr. Nicolas is informed and believes and thereupon alleges that said defendants and each of them, individually and or while acting in concert with one

1  another, negligently breached said duty to use due care. Defendants and each of them
2  directly and proximately caused the damages and harm suffered by Dr. Nicolas.

3          80.    Defendants and each of them knew or reasonablely should have known their
4  reasonable duties owed to Dr. Nicolas, and negligently breached such duties by falsely
5  arresting and falsely imprisoning Dr. Nicolas.

6          81.    The conduct of Servant Defendants and each of them described herein was
7  done within the course and scope of their employment, agency, and/or service for their
8  respective Master Defendants and each of them, and under color of their authority.
9  Therefore, Master Defendants and each of them are vicariously liable for such unlawful
10 conduct of their respective Servant Defendants under California Government sections
11 815.2, 815.3, 820, the doctrine of respondeat superior, and other laws.

12         82.    Alternatively, the unlawful conduct of the defendants and each of them was
13 done in their individual capacity, and so the defendants and each of them is individually
14 liable for the injuries they directly and/or proximately caused Dr. Nicolas by way of such
15 unlawful conduct.

16         83.    Defendants and each of them proximately and directly caused the Dr.
17 Nicolas's injuries, harm, and damages. As a result of the negligence of said defendants
18 and each of them, Dr. Nicolas has suffered damages and injuries as described herein.

19                          **THIRD CAUSE OF ACTION**
20      **(Negligent hiring, retention, supervision, and training against all Individual**
21                                  **Defendants)**

22         84.    Plaintiff hereby realleges and incorporates each and every allegation set
23 forth in all the above paragraphs as if fully set forth herein.

24         85.    Plaintiff is informed and believes and thereupon alleges that Defendants and
25 each of them owed the public in general, and Dr. Nicolas in particular, the following
26 duties: to use reasonable and due care in hiring, retaining, training, and supervising their
27 agents, servants, and/or employees; to use due care in continuously reviewing and
28 evaluating the competency and fitness of their agents, servants, and/or employees; to use

1  due care in insuring that their agents, servants, and/or employees are fit and competent
2  for the tasks for which they were hired.

3      86.    Plaintiff is informed and believes and thereupon alleges that prior to the
4  events described herein, Master Defendants and each of them had actual and/or
5  constructive notice and knowledge of the propensities of their respective Servant
6  Defendants to commit the above described unlawful acts and to abuse their position and
7  authority, and such Master Defendants failed to take sufficient reasonable steps to
8  prevent such negligence and intentional abuse of power and the resultant harm, in
9  complete disregard of the rights and safety of the public in general and of Dr. Nicolas in
10  particular.  Thus, Defendants and each of them breached the duties they owed to Dr.
11  Nicolas.

12      87.    Plaintiff is informed and believes, and thereupon alleges, that by hiring,
13  employing and retaining their respective Servant Defendants to a position of trust and
14  special authority with the public, Master Defendants and each of them held their
15  respective Servant Defendants out to the public in general and to Dr. Nicolas in
16  particular, as reasonably competent and trustworthy.  Thus, the defendants and each of
17  them breached the duties they owed to Dr. Nicolas.

18      88.    Plaintiff is further informed and believes and thereupon alleges, that Master
19  Defendants and each of them had a duty to reasonably and properly supervise their
20  servants, agents, and/or employees because such of their respective Servant Defendants
21  were in a unique position of trust, confidence, power, and authority, under which the
22  public in general, and Dr. Nicolas in particular, should be able to reasonably suppose
23  themselves to be safe from wrongful conduct, abuse of power, and harm.

24      89.    Plaintiff is informed and believes and thereupon alleges that Master
25  Defendants and each of them negligently, carelessly, recklessly, and/or in any other
26  actionable manner, failed to properly hire, train, and ensure the character, quality, ability,
27  fitness, and competence of their respective Servant Defendants.   Thus, Master
28  Defendants and each of them breached the duties they owed to Dr. Nicolas.

90.     Master Defendants and each of them negligently, carelessly, and recklessly hired, employed, retained, trained, supervised, assigned, controlled, and negligently, carelessly, and recklessly failed to adequately discipline their respective Servant Defendants, even though the Master Defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that there was no probable cause for Plaintiff's arrest and/or imprisonment, and that the other acts and/or omissions described above were similarly unwarranted.  In allowing their respective Servant Defendants to be given the responsibilities with which their professional positions were imbued, Master Defendants and each of them breached the duties they owed to Dr. Nicolas.

91.     As a direct and proximate result of each and every Defendants' negligence, Dr. Nicolas suffered injury and sustained the harm and damages described herein, including being falsely arrested and falsely imprisoned for 843 days.

92.     The conduct of the Servant Defendants and each of them described in this complaint was done within the course and scope of their employment, agency, and or service for their respective Master Defendants and each of them, and under color of their authority.  Therefore, Master Defendants, and each of them, are vicariously liable for such unlawful conduct of their respective Servant Defendants under California Government Code sections 815.2, 815.3, 820, the doctrine of respondeat superior, and other laws.

93.     Alternatively, the unlawful conduct of Defendants and each of them was done in their individual capacity, and so Defendants and each of them is individually liable for the injuries they directly and/or proximately caused Dr. Nicolas by way of such unlawful conduct.

94.     Master Defendants and each of them negligently, carelessly, and/or with a reckless disregard for the safety of the public in general, and of Dr. Nicolas in particular, employed and supervised their respective Servant Defendants, and assigned said defendants to do the actions described herein.  Thus, the defendants and each of them

1   breached the duties they owed to Dr. Nicolas . Defendants and each of them directly and

2   proximately caused the damages and harm suffered by Dr. Nicolas.

3       95.   By way of their above-detailed actions and omissions, Defendants and each

4   of them directly and proximately caused the injuries, harm, and damages to Dr. Nicolas,

5   and Dr. Nicolas has actually suffered such injuries, harm, and damages as detailed in this

6   Complaint.

7                           **FOURTH CAUSE OF ACTION**

8   **(Violation of civil rights under California Civil Code section 52.1 against all**

9                                    **defendants)**

10      96.   Plaintiff hereby realleges and incorporates each and every allegation set

11  forth in all the above paragraphs as though fully set forth herein.

12      97.   Defendants and each of them are state actors, acting on behalf of a

13  governmental body, and are each and all subject to regulation under the California and

14  United States Constitutions, which prohibit state actors from violating the civil rights of

15  all persons. City, County, RPD, and the DA's Office are public entities and are thus state

16  actors serving governmental functions.  The remaining defendants are employees and

17  agents of public entities and are thus state actors serving governmental functions.

18      98.   In doing the acts and/or omissions as alleged heretofore in this complaint,

19  Defendants and each of them intentionally, maliciously, recklessly, and/or negligently

20  caused Dr. Nicolas to be subjected to the violation of her rights under the United States

21  and California Constitutions, including, but not limited to, the right to be free from

22  unreasonable searches and seizures, the right to due process of law, the right to equal

23  protection of the law, the right to privacy, the right to liberty, and specific rights under

24  the Constitution of the State of California, Article I, Section 1 (i.e., property rights, safety

25  rights, privacy rights), Sections 7 and 29 (i.e., due process rights), Section 11 (i.e.,

26  habeas corpus rights), and Section 13 (i.e., right against unreasonable search and

27  seizure), among other California civil rights.

28

99.   As a direct and proximate result of Defendants' violation of Dr. Nicolas's civil and constitutional rights, Dr. Nicolas incurred damages as alleged in this complaint and is entitled to an award of statutory damages under California Civil Code sections 52 and 52.1.

100.   The conduct of Servant Defendants and each of them described in this complaint were done within the course and scope of their employment, agency, and/or service for their respective Master Defendants and each of them consciously disregarded, authorized, and/or ratified the conduct of their respective Servant Defendants. Therefore, Master Defendants and each of them are vicariously liable for such unlawful conduct of their respective Servant Defendants under California Government Code sections 815.2, 815.3, 820, the doctrine of respondeat superior, and other laws.

101.   Alternatively, the unlawful conduct of Defendants and each of them was done in their individual capacity, and so Defendants and each of them in individually liable for the injuries they directly and/or proximately caused Dr. Nicolas by way of such unlawful conduct.

102.   The aforementioned acts of Defendants and each of them were done by them knowingly, intentionally, and maliciously, for the purpose of harassment, oppression, and inflicting injury upon Dr. Nicolas, and in reckless, wanton, and callous disregard of Dr. Nicolas's safety, security, and civil rights. By reason thereof, Plaintiff claims exemplary and punitive damages from Defendants in amount according to proof at trial.

## FIFTH CAUSE OF ACTION

### (Violation of civil rights protected under 42 U.S.C. section 1983 and the Constitutions of the United States and the State of California against all defendants)

103.   Plaintiff hereby realleges and incorporates each and every allegation set forth in all the above paragraphs as though fully set forth herein.

104.   Defendants and each of them are state actors, acting on behalf of various governmental bodies, and are each and all subject to regulation under the California and

1   United States Constitutions, which prohibit state actors from violating the civil rights of

2   all persons. City, County, the DA's Office, and RPD are public entities and are thus state

3   actors serving governmental functions.   The remaining defendants are agents and

4   employees of public entities, and are thus state actors serving governmental functions.

5        105.   The unlawful searches and seizure, false arrest, and false imprisonment of

6   Dr. Nicolas by Defendants and each of them, and other unlawful actions taken against

7   Dr. Nicolas by the Defendants and each of them described herein, were unconstitutional,

8   without cause or justification, excessive and illegal, and in violation of Dr. Nicolas's

9   constitutional rights to be free from unlawful searches and seizures, the right to due

10  process of law, the right to equal protection of the law, the right to privacy, and specific

11  rights under the Constitution of the State of California, Article I, Section 1 (i.e., property

12  rights, safety rights, privacy rights), Sections 7 and 29 (i.e., due process rights), Section

13  11 (i.e., habeas corpus rights), and Section 13 (i.e., right against unreasonable search and

14  seizure), among other civil rights.

15       106.   As a direct and proximate result of Defendants' and each of their actions,

16  Dr. Nicolas was deprived of rights, privileges and immunities under United States and

17  California Constitutions, in particular the rights to be secure in one's person, to be free

18  from unlawful searches and seizures, to be free from unreasonable invasions of privacy,

19  to be free from unlawful and false arrest and imprisonment, and other violations of law

20  enumerated and specifically described in this complaint, and protected under the Fourth

21  and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C.

22  § 1983. The Fourth and Fourteenth Amendments are made applicable to the States and

23  state actors pursuant to 42 U.S.C. § 1983.

24       107.   Plaintiff further alleges that Defendants and each of them, acting with

25  malice, intent, and/or with gross negligence and with reckless and deliberate indifference

26  to the rights and liberties of the public in general and of Dr. Nicolas in particular,

27  knowingly maintained, enforced and applied a policy and practice of:

28

a.     Employing and retaining employees who Defendants and each of them at all times herein knew, or reasonablely should have known, had dangerous propensities for abusing and/or neglecting their authority among other acts and omissions;

b.     Inadequately supervising, training, controlling, assigning, and disciplining employees who Defendants and each of them knew, or in the exercise of reasonable care should have known, were abusing their power by falsely arresting and imprisoning Dr. Nicolas, along with the other acts and omissions herein described; and

c.     Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling the unlawful and unprofessional conduct of such employees, including with respect to illegal acts.

108.     At all times relevant herein, Master Defendants and each of them knew or should have reasonably known that their respective Servant Defendants and each of them had a propensity to act unlawfully, and/or to fail to prevent, despite their duty to do so, such unlawful conduct, including but not limited to obtaining and conducting unlawful searches and seizures; yet the Master Defendants failed to adequately hire, train, retain, monitor, supervise, and discipline their respective Servant Defendants. Master Defendants and each of them have as a matter of policy, custom, and/or practice, with deliberate and reckless indifference, failed to properly sanction or discipline their respective Servant Defendants and each of them for violation of the law and the constitutional right of citizens, and the Master Defendants have unlawfully tolerated, ratified, permitted, concealed, failed to disclose, failed to reasonable discover, and/or condoned systematic misuse of power and authority, and violations of law, by their respective Servant Defendants, thereby intentionally, maliciously, recklessly, and/or negligently causing them to engage in said unlawful conduct.

109.   Master Defendants and each of them had knowledge that some or all of the wrongs described in detail above were about to be committed, had the power to prevent or aid in the prevention of commission of said wrongful acts and by reasonable diligence could have prevented the aforementioned wrongs done, but neglected and/or refused to prevent, or aid in the prevention of commission of said wrongs done.

110.   Plaintiff has a constitutional right under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizure which were made without probable cause.

111.   Defendants acted with a conscious disregard of Plaintiff's rights conferred upon her by Section 1983, Title 42 of the United States Code, the Fourth and Fourteenth Amendments to the United States Constitution, and provisions of the California Constitution as noted above, by falsely arresting Dr. Nicolas and falsely imprisoning her for 843 days without probable cause.  Such conduct constitutes malice, oppression, and/or fraud under California Civil Code section 3294, and entitles Plaintiff to punitive damages against Defendants to punish and set an example of Defendants.

112.   As a direct and proximate result of Defendants' and each of their actions, including unlawfully obtaining and conducting wiretaps, and unlawfully and falsely arresting and imprisoning Dr. Nicolas without probable cause, and Dr. Nicolas has thus suffered the injuries and damages described herein, including spending 843 days in jail.

113.   Due to the conduct of Defendants, and each of them, Plaintiff has been required to incur attorney fees and will continue to incur attorney fees, all to Plaintiff's damage.

114.   Plaintiff is informed and believes and thereupon alleges that the conduct of the defendant and each of them was intentional, malicious oppressive, and/or done with a conscious or reckless disregard for the rights of Dr. Nicolas.  As a result, Plaintiff is entitled to recover all damages provided for the violation of these rights and her personal injuries, including but not limited to, general and special damages according to proof, punitive damages, costs of suit, and attorney fees under 42 U.S.C. § 1988.

1    WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them,

2  as follows:

3        1.      For general damages according to proof but not less than $25,000,000.00;

4        2.      For special damages according to proof;

5        3.      For consequential and incidental damages according to proof;

6        4.      For damages for pain and suffering according to proof;

7        5.      For punitive and exemplary damages according to proof;

8        6.      For interest at the legal rate on all sums due;

9        7.      For reasonable attorney fees as allowed by law and according to proof;

10       8.      For costs of suit and expert fees pursuant to applicable statutes;

11       9.      For declaratory relief as indicated herein;

12       10.     For injunctive relief as indicated herein;

13       11.     For such other and further relief as the court deems just and proper.

14

15  Dated:  March 11, 2009                    SMITH, CHAPMAN & CAMPBELL

16

17

18                                           STEVEN C. SMITH
                                             Attorneys for Plaintiff Epifania Nicolas

19

20                      **DEMAND FOR TRIAL BY JURY**

21       Plaintiff hereby demands a trial by jury.

22

23  Dated:  March 11, 2009                    SMITH, CHAPMAN & CAMPBELL

24

25                                           STEVEN C. SMITH
                                             Attorneys for Plaintiff Epifania Nicolas

26

27

28

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Epifania Nicolas

**DEFENDANTS**
CITY OF RIVERSIDE, CALIFORNIA, et al.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Smith, Chapman & Campbell
1800 N. Broadway, Suite 200
Santa Ana, CA 92706

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in box only.)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☑ **MONEY DEMANDED IN COMPLAINT:** $ 25,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Civil Rights 42 U.S.C. § 1983

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS — PERSONAL INJURY | TORTS — PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 230 Rent Lease & Ejectment | ☑ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 240 Torts to Land | IMMIGRATION | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 245 Tort Product Liability | ☐ 462 Naturalization Application | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 290 All Other Real Property | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | ☐ 465 Other Immigration Actions | | |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: CV09-01737

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date: 3-11-09

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    CIVIL COVER SHEET                    Page 2 of 2